COMMERCIAL TRAVELERS' HOME ASS'N OF AMERICA v. McNAMARA.

(Supreme Court, Appellate Division, Third Department.   May 11, 1904.)

1. CORPORATIONS—SUBSCRIPTION FOR BENEFIT—TITLE TO MONEY COLLECTED.
    Where several persons formed themselves into a committee, and published a paper with the announcement that proceeds from the sales of the paper, etc., would be turned over to a corporation formed for a charitable purpose, title to the moneys realized by the committee did not pass to the corporation.

2. SAME—DONATIONS.
    One is not bound by his subscription or promise to give to a charitable or public enterprise after the enterprise has been abandoned.

3. SAME—ACTION AGAINST COMMITTEE—MONEY OBTAINED BY FALSE PRETENSES.
    Where a number of persons formed themselves into a committee, and collected money, which they announced would be turned over to a certain corporation formed for a charitable purpose, in an action by the corporation against the committee to recover the money, a contention that the funds had been obtained by false pretenses, was of no avail to plaintiff.

4. ACTION AGAINST COMMITTEE—PARTIES.
    Where a number of persons formed themselves into a committee, and obtained moneys, which they announced would be turned over to a certain corporation, but the treasurer of the committee retained the moneys, in an action by the corporation against the treasurer all the members of the committee should be made parties.
    Chase, J., dissenting.

Appeal from Trial Term, Broome County.

Action by the Commercial Travelers' Home Association of America against Catherine E. McNamara.   From a judgment in favor of plaintiff (86 N. Y. Supp. 608), defendant appeals.   Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Edward K. Clark, for appellant.
Carver, Deyo & Hitchcock, for respondent.

HOUGHTON, J.   The plaintiff was chartered in 1892 for the purpose of erecting and maintaining a home for indigent commercial travelers who might become members of the association.   In various ways the committee of the plaintiff raised in money, according to one witness, $200,000, and, according to another, $100,000, and purchased

¶ 2. See Subscriptions, vol. 45, Cent. Dig. § 22.

a tract of land near the city of Binghamton. In beautifying the grounds and building the foundation there was expended approximately $30,000 of the fund. The balance of either $70,000 or $170,-000 has been lost either through peculation or mismanagement of the committee. The membership has dwindled, and there remains in the treasury only about $3,000, and nothing has been further done toward erection of the building, nor with the grounds, except to fence them so they might be used for pasture, and to protect the foundation from the elements.

While the success of the enterprise seemed probable, and late in 1896, many ladies of the city of Binghamton formed themselves into a committee for the purpose of raising funds for the association. A scheme was devised whereby the editor and proprietor of one of the leading newspapers of the city of Binghamton donated an edition of his paper to the ladies, to be designated as the "Woman's Edition." Notices were sent out soliciting advertisements and purchases of the paper at liberal figures, in which it was stated that the edition would be published "in the interest of the Commercial Travelers' Home Association of America, the entire proceeds to be applied toward completing the home now in process of construction." The defendant was selected as manager of the enterprise, and the moneys arising from advertisements and sales of the paper were paid to her, and she received, as the court finds, above expenses paid out, upwards of $1,-000. The committee in charge evidently lost the funds very rapidly, and, shortly after the receipt of this money by the defendant, it became apparent that the enterprise was a failure, and that the home would not be built. There was conference amongst the ladies who had raised the money, in which it was discussed that the building of the home was probably abandoned, and that the moneys should be given to some charitable institution within the city. At various times, beginning in 1899, some representative of the plaintiff demanded the money from the defendant, and she refused to pay to the plaintiff or its committee; making substantially the excuse that the enterprise of building the home had failed, and that the moneys should go to some other object. The trial court found that the moneys thus raised belonged to the plaintiff, and directed judgment against the defendant therefor. In this we think the court was in error.

The most that can be said as to the attitude of the "woman's committee" is that it announced that, if the public at large would advertise and purchase the paper, it would give the profits to the completion of the Commercial Travelers' Home. Standing alone, as a legal proposition, the committee declared its intention of making a gift. This did not pass to the plaintiff legal title to the moneys realized. If the moneys paid for advertisements and purchases of the paper be deemed donations by individuals, the committee would doubtless hold the moneys in trust for the purpose indicated in the announcement. But the object of the donation has failed, for the record conclusively shows that the mismanagement of the committee has rendered practically impossible the completion of the home. This being the case, the moneys belonged to the original donors. The law is not so absurd as to hold one to his subscription or promise to give

to a charitable or public enterprise after the enterprise has been abandoned. If no condition be attached, the law will imply that the enterprise must be existing when payment is demanded. The "woman's committee," and this defendant, representing it, is bound by no stronger legal principle than would apply, had they agreed in writing to pay a specific sum for the completion of the home.

The cases of Presbyterian Church of Albany v. Cooper, 112 N. Y. 517, 20 N. E. 352, 3 L. R. A. 468, 8 Am. St. Rep. 767, and Keuka College v. Ray, 167 N. Y. 96, 60 N. E. 325, have set at rest the various theories upon which voluntary subscriptions become binding on the promisor. In the latter case, Gray, J., says:

"I think the discussion is reduced simply to this—whether the agreement which is sought to be enforced, and which is a voluntary promise on the part of the defendant, expressly or impliedly, either imposes upon the promisee some obligation, which is assumed, or requests of the promisee the performance of services, which are to be performed, upon the strength of the promise. If those conditions are met, then, within the rule of law, there is a consideration which will suffice to uphold the agreement or the promise. In this peculiar class of agreements to pay money, those which are conditioned merely upon all subscriptions for a like purpose aggregating a certain amount by a certain day are deemed to lack the legal consideration to make them enforceable. The doctrine, however, may be regarded as well established that, if money is promised to be paid upon the condition that the promisee will do some act or perform certain services, then the latter, upon performance of the condition, may compel payment. Nor need a request to the promisee to perform the services be expressed in the instrument. It may be implied."

After the raising of the money the plaintiff rendered no services, nor did it incur any liability on account of the fund. It did not even proceed in any manner with the erection of the building; nor did the plaintiff, through its officers, or in any legal way, aid in the scheme of obtaining the money. But so far as appears, the advertisers obtained the worth of their money in the size of the edition, and the purchasers of the papers acquiesced in the high price and paid it. The profits therefore belonged to the promoters of the scheme. Their announcement that they proposed to give those profits for the completion of the home did not vest title in the plaintiff. Nor does it help plaintiff's title to say that the money was obtained by false pretenses. The only ones who could complain of that are those who paid their money. But parol evidence was admissible to show the purposes for which the fund was raised. Dodge v. Gardiner, 31 N. Y. 244. The evidence discloses that the purpose, as disclosed in discussions of the committee, was to buy furnishings for the home when completed, and, according to the announcement in the printed circular, it was "for the completion of the home in process of construction." It would do violence to the situation disclosed to say that the intent was to contribute this comparatively small amount to the erection from its foundation of a building so pretentious as the one contemplated.

We are not unmindful of the fact that the money does not belong to this defendant. But she is its lawful custodian, and is responsible for its payment to the rightful owners. By our conclusion, the plaintiff is not the legal owner; but if there is anything to litigate with respect to the title of the fund, the members of the "woman's com-

mittee," at least, should be made parties to the action, as is pleaded
by the defendant's answer.

The judgment should be reversed and a new trial granted, with
costs to the appellant to abide the event. All concur, except CHASE,
J., who dissents.